**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **DORLIA WILSON, AS NEXT** ) | |
| **FRIEND TO MINOR CHILD W.B.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 2:24-cv-02375-EFM-RES** |
| **v.** ) | |
| ) | |
| **OTTAWA U.S.D. 290, ET AL,** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

Plaintiff Dorlia Wilson, as Next Friend to Minor Child W.B., by and through her

attorneys of record, submits the following response pursuant to D. Kan. Rule 7.1(d)(3) to

Defendants' Partial Motion to Dismiss (ECF 39) and memorandum in support (ECF 38) made

pursuant to Fed. R. Civ. P. 12(b)(2)[1] and 12(b)(6).

I.  <u>Nature of the Case.</u>

This is a case alleging violations of Title VI, 42 U.S.C. § 2000d et seq., 42 U.S.C. § 1983,

for Fourteenth Amendment claims and state law negligence claims arising from a common

nucleus of operative fact brought by the parent of a minor student enrolled in the Ottawa U.S.D.

290 school system.

II.  <u>Factual Contentions.</u>

The Defendants repeat or restate numerous allegations of fact stated in Plaintiff's

complaint. (Def. Memo at 2-3).  All well-pleaded allegations of the complaint are accepted as

---

[1] The Plaintiff understands the motion to be based in part on Rule 12(b)(1) rather than 12(b)(2). Rule 12(b)(1) is directed at subject-matter jurisdiction. The Defendants' brief in support refers to subject-matter jurisdiction over the Plaintiff's state law claims as a ground for dismissal. (Def. Memo. at 1). Rule 12(b)(2) is directed at personal jurisdiction, which the Defendants appear not to address in their brief in support.

true and construed in the light most favorable to the Plaintiff as the nonmoving party. In reviewing the motion, the Court is required to accept Plaintiff's allegations of fact only. See, authority cited, *infra*, at 2-3.

III.    Argument and Authorities.

**1.    *Twombly-Iqbal* Standards.**

The Defendants offer a summary of pleading standards as established in *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (Def. Mem. at 4, 5). The Plaintiff generally agrees with the Defendants' presentation of those standards.

*Twombly-Iqbal* represents a middle ground between heightened fact pleading and labels, conclusions and formulaic recitations of the elements of a cause of action. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). It is noteworthy that in *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), the Court leavened the effect of *Twombly* by holding that the complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, U.S. at 93, citing, *Twombly*, U.S. at 555.

Defendants insinuate, without providing specifics, that Plaintiff's complaint is comprised of the "threadbare recitals, supported by mere conclusory statements" that plagued the complaint in *Iqbal.* (Def. Mem. at 4, 5). However, the fact remains that well-pleaded allegations of the complaint are accepted as true and construed in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008); and *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). "The question is whether, if the facts are true, it is plausible and not merely possible that the plaintiff is entitled to

relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) (internal citation omitted).

"We look for plausibility in the complaint." *Alvarado*, at 1215, citing and quoting, *Twombly*, S.Ct. at 1970. The plausibility requirement is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, S.Ct. at 1949, citing, Twombly, U.S. at 556. *Accord, Lynch v. City of New York*, 952 F.3d 67, 72 (2d Cir. 2020) (dismissal of Fourth and Fourteenth Amendment claims on Rule 12(b)(6) motion reversed in part; plausibility does not impose probability standard).

Finally, the court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff. *Arar v. Ashcroft*, 585 F.3d 559, 567 (2nd Cir. 2009).

**2. Plaintiff Substantially Complied with K.S.A. 12-105b Notice Requirements.**

Defendants first argue that this Court cannot maintain subject-matter jurisdiction over Plaintiff's state law claim because Plaintiff did not "substantially comply" with the requirements of the Kansas Tort Claims Act ("KTCA") (Def. Mem at 5). While Plaintiff generally agrees with Defendants' contention that substantial compliance with K.S.A. 12-105b is required before a court can have subject-matter jurisdiction over the state law claim at issue, their assertion that Plaintiff did not substantially comply with the notice elements of the statute is unfounded.

"Substantial compliance has been held to mean compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." *Orr v. Heiman*, 270 Kan. 109, 113, 12 P.3d 387 (2000). The statute's purpose is to advise the proper municipality of the time and place of the injury so as to provide it an opportunity to ascertain the character and extent

of the injury sustained. *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, 639, 205 P.3d 1265 (2009).

A notice requirement allows a municipality to review and investigate tort claims against it and approve or deny claims before having to litigate them. *Cummings v. City of Lakin*, 276 Kan. 858, 863, 80 P.3d 356 (2003). A "mechanical counting" of information addressing each enumerated category is not required. *Dodge City Implement, Inc.,* Kan. at 642. Despite this clear authority, the Defendants now demand what the statute does not: a "mechanical counting" of damages.

Defendants' only argument that Plaintiff did not meet the notice requirements of the KTCA is that requesting damages "in excess of $75,000" in her Notice of Claim letter is not specific enough to allow Defendants to investigate and "make a decision as to whether to deny the claim or 'approve the claim in its entirety.'" (Def. Mem. at 7). Defendants cite a slew of Kansas appellate court cases, and some state Supreme Court cases, interpreting the KTCA, but appear to ignore the fact that not one of the cited cases has held that the statute requires a detailed or otherwise fully delineated itemization of one's damages to substantially comply with the notice requirement.

First, Defendants cite *Zeferjohn v. Shawnee Cnty. Sheriff's Dept.,* 26 Kan. App. 2d 379 (1999), a case in which the plaintiff did not substantially comply with the statute when he stated vastly different damages in his notice letter than in his petition. (Def. Memo. at 6) Here, though, Plaintiff's damages sought in her petition are identical to those in her notice letter – in excess of $75,000 – so this argument falls flat. Moreover, the Kansas Supreme Court has more recently clarified that a plaintiff is not limited only to the damages sought in the notice letter. *Cont'l W. Ins. Co. v. Shultz,* 297 Kan. 769, 778, 304 P.3d 1239 (2013) (substantial compliance existed even

though claimant later sought to amend pleadings and pursue much higher damages as facts evolved in the litigation).

Second, Defendants cite *Dodge City Implement, Inc. v. Bd. Of County Comm'rs*, 288 Kan. 619, 205 P.3d 1265 (2009) as another example of a failure to substantially comply with the 12-105b notice requirement. (Def. Memo. at 6) However, there was a list of issues that hindered substantial compliance in that case – not just a lack of specified damages. The plaintiff there identified an incorrect claimant, did not identify the ultimate plaintiffs in the lawsuit, give their address, or set forth the name and address of counsel. *Id.* Kan. at 642. And while the damages claimed were deemed to be insufficient to put the municipality on notice, there was a rather convoluted issue with a third-party settlement that resulted in a miscommunication of the damages sought. In other words, the facts of *Dodge City Implement* that Defendants rely on so heavily are markedly different than the facts at issue.

Finally, Defendants cite *Garcia v. Anderson*, 46 Kan. App. 2d 1094, 268 P.3d 1248 (2012), as another purportedly similar instance of failing to substantially comply with the KTCA. (Def. Memo. at 6). However, there, the plaintiff again did not notify the municipality at all of the damages sought. They argued doing so was unnecessary in a matter where the municipality said mediation was "out of the question" with regards to a Kansas Human Rights Commission complaint. *Id.,* Kan.App.2d at 1102. And while the Court of Appeals agreed with the defendant that excluding damages completely did fail to substantially comply with the statute, *Id.,* Kan.App.2d at 1104, the facts of *Garcia* are once again wildly dissimilar to the facts at issue.

Again, Defendants state that the supposed lack of specificity in Plaintiff's damages claim did not allow the school district to investigate the matter fully. However, Defendants initiated no contact with Plaintiff's counsel to assist them with ascertaining the extent of the injury sustained

or to otherwise review and investigate the claim. As such -- this argument is rich with irony –

Defendants appear to argue that they have been deprived of the opportunity to review and

investigate the claim, yet, they can show no evidence that any such effort was even made. Whether

there was any internal investigation and what it consisted of is certainly a subject Plaintiff hopes

to glean in discovery.

Plaintiff here did not exclude the damages section of the letter, and Defendants fail to point

to any case where a court has ruled that a specific delineation of damages is required to

substantially comply with the statute. In fact, the last time the Kansas Supreme Court decided a

case on this issue, it specifically declined to rule on how specific the damages section of a KTCA

Notice of Claim letter needed to be. *Sleeth v. Sedan City Hosp.,* 298 Kan. 853, 317 P.3d 782 (2014)

("In this case, it is unnecessary to determine what detail is required." P.3d at 791).

Finally, this Court ruled on a similar issue in *Arnold v. City of Olathe*, 413 F. Supp. 3d

1087 (D. Kan. 2019). There, defendants attempted to argue that a Notice of Claim was deficient

because it sought only damages "in excess of $1,000,000." *Id.* at 1113. This Court was not

persuaded by such an argument and held that the plaintiff "adequately met the requirements of"

K.S.A. 12-105b(d). *Id.* Just because Plaintiff in the present case is seeking damages in excess of

$75,000 rather than $1,000,000 should not mean the holdings in *Sleeth* and *Arnold* carry any less

weight.

As such, this Court should dismiss Defendants' argument that Plaintiff failed to

substantially comply with the KTCA and maintain subject-matter jurisdiction over the state law

claim at issue.

**3. Heightened Pleadings Standard.**

Defendants cite a plethora of cases from the Tenth Circuit Court of Appeals that purport to require a heightened, two-pronged pleading standard when a defense of qualified immunity is asserted in a § 1983 case. *See Ramirez v. Dept. of Corrections, Colo.,* 222 F.3d 1238 (10th Cir. 2000); *see also Medina v. Cram*, 252 F.3d 1124 (10th Cir. 2001). These two cases comprise the crux of Defendants' argument that a heightened standard of pleading applies to qualified immunity cases. Defendants, though, leave out crucial information about the procedural history of those cases when presenting them to this Court: The Tenth Circuit in *Ramirez*, for example, required a heightened pleading standard for a motion under Fed. R. Civ. Pro. 12(c). And the *Medina* court was ruling on a motion for summary judgment.

That is not where this case lies procedurally. Defendants filed a motion to dismiss under Rule 12(b), and to date have not filed a motion for summary judgment. Therefore, the authority they rely on to assert the heightened pleading standard supposedly required by the Tenth Circuit is wholly inapplicable to the case at issue.

Moreover, the heightened pleading standard the Tenth Circuit has applied to some qualified immunity cases cited by Defendants is not in line with Supreme Court mandates. *See, Leatherman v. Tarrant County,* 507 U.S. 163 (1993) (no heightened pleading standards exist for cases claiming municipal liability under § 1983); *Crawford-El v. Britton*, 523 U.S. 574 (1998) (Court of Appeals erred in applying a heightened burden of proof for unconstitutional motive cases against public officials). The Supreme Court has been careful not to rewrite the Federal Rules of Civil Procedure by not requiring Plaintiffs to anticipate a defense of qualified immunity or require heightened specificity in pleadings alleging Section 1983 liability – yet, that is what Defendants seek to require of Plaintiff here.

The Tenth Circuit ultimately recognized this in *Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001), holding that the "court's heightened pleading requirement cannot survive *Crawford-El*" and later that "…this court's heightened pleading requirement finds no support in the Federal Rules of Civil Procedure and constitutes a deviation from the notice-pleading standards of Rule 8." *Id.* at 916. The Tenth Circuit does not require a heightened pleading standard in qualified immunity cases following the *Currier* decision, and in fact has clarified the pleading standards required to comply with the seminal *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) decision. *Robbins v. Oklahoma,* 519 F.3d 1242 (10th Cir. 2008) ("the complaint must meet the minimal standard of notice pleading as articulated by the Court in *Twombly*.").

From there, Defendants peculiarly spend nearly two pages of their motion arguing substantive due process claims against them should be dismissed. Plaintiff need not address the nine cases cited in Defendants' motion because she did not plead a substantive due process violation to begin with.

### 4. Qualified Immunity.

Defendants assert an affirmative defense of qualified immunity for the individual defendants named in Plaintiff's Complaint. They argue that the claims against the individual defendants should be dismissed after qualified immunity is applied.

All of the individual Defendants seek qualified immunity. The Plaintiff is under a burden to show that 1) one or more of the individuals violated a Constitutional right; and 2) the constitutional right was clearly established. *Thomson v. Salt Lake City,* 584 F.3d 1304, 1312 (10th Cir. 2009). The Plaintiff suggests she has made a plausible presentation that one or more of the individuals violated her son's  Fourteenth Amendment rights of Equal Protection.

"A right is clearly established … 'when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains.'" *Thomas v. Kaven,* 765 F.3d 1183, 1194 (10th Cir. 2014). "A previous decision need not be 'materially factually similar or identical to the present case; instead the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Id.*

In deciding whether to grant qualified immunity, one step is for the court to ask whether, taking the facts in a light most favorable to the plaintiff, the defendants' conduct violated a federal right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (emphasis added).

The other step is to ask whether the right has been clearly established. "Thus, while a plaintiff does not have to cite a 'case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Leiser v. Moore*, 903 F.3d 1137, 1140 (10th Cir. 2018), citing, *White v. Pauly*, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017). The case law does not require a plaintiff to provide a court with a case directly on point, *White,* S.Ct. at 551. *See also, Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

Asserting a qualified immunity defense via a Rule 12(b)(6) motion subjects defendants to a more challenging standard of review than would apply on summary judgment. *Thomas v. Kaven,* 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation and citations omitted)

Excessive reliance on *White* is to be avoided given that it was a Fourth Amendment case. Specificity with respect to the clarity of the establishment of the right in question is especially important in the Fourth Amendment context where the court has recognized that it is sometimes

difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts. *Mullenix v. Luna*, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015). *See also, Contreras v. Dona Ana County Board of County Commissioners,* 965 F.3d 1114, 1135 (10th Cir. 2020) (specificity of prior law with particularized facts most salient in Fourth Amendment context, and particularly true in excessive force cases).

The rules for supervisory liability have been stated with some clarity by the Tenth Circuit. The Plaintiff must establish an "affirmative link" between the supervisors and the alleged Constitutional violation. *Schneider v. City of Grand Junction Police Department*, 717 F.3d 760, 767 (10th Cir. 2013). The affirmative link is comprised of three prongs: 1) personal involvement; 2) causal connection; and, when applicable, 3) culpable state of mind. *Id.* The Plaintiff does not view the third element, state of mind, as applicable to this case. The Plaintiff contends that the first two affirmative links are plausibly shown in the operative complaint.

In recent years, there has been a development of judicial and academic writings that questions or outright opposes the continuing validity of qualified immunity.

"To some observers, qualified immunity smacks of unqualified impunity, letting public officials duck consequences for bad behavior – no matter how palpably unreasonable – as long as they were the *first* to behave badly. *Zadeh v. Robinson,* 928 F.3d 457, 479 (5th Cir. 2019) (Willett, J., concurring and dissenting). "But courts of appeal are divided – intractably – over precisely what degree of factual similarity must exist. How indistinguishable must existing precedent be?" *Id.*

"In day-to-day practice, the 'clearly established' standard is neither clear nor established among our Nation's lower courts." *Id.* "Even in this hyperpartisan age, there is a growing, cross-ideological chorus of jurists and scholars urging recalibration of contemporary immunity jurisprudence." *Id.* at 480.

Two current members of the U.S. Supreme Court and three former members "have authored or joined opinions expressing sympathy" with various doctrinal, procedural and pragmatic critiques of qualified immunity. Joanna C. Schwartz, "The Case Against Qualified Immunity," 93 NOTRE DAME LAW REVIEW 1797, 1800 (2018). See also, Alexander A. Reinert, "Qualified Immunity's Flawed Foundation" 111 CALIFORNIA LAW REVIEW 201 (2023) (exploring the Derogation Canon as applied to common law; and the "lost text" of the original Section 1983 and its language making no place for common law immunities)

The Plaintiff requests the Court to carefully consider these authorities and suggest that a higher court declare an end to qualified immunity. Stare decisis constrains this Court from making that declaration itself.

### 5. Clearly Established Federal Rights.

The Plaintiff alleges racially discriminatory treatment in violation of the Equal Protection Clause of the Fourteenth Amendment. To prove this violation, a plaintiff must show: 1) that the plaintiff was treated differently than others similarly situated based on race and; 2) the plaintiff was deprived of an educational benefit or opportunity. *Sturdivant v. Fine,* 22 F.4th 930, 936 (10th Cir. 2022). The Equal Protection Clause prohibits the "intentional, arbitrary and unequal treatment of similarly situated individuals… "*Ashaheed v. Currington,* 7 F.4th 1236, 1247 (10th Cir. 2021).

African-American students "must receive the same treatment at the hands of the state as students of other races." *McLaurin v. Okla. State Regents for Higher Educ.,* 339 U.S. 637, 642, 70 S.Ct. 851, 94 L.Ed.2d 1149 (1955). The fundamental principle is that racial discrimination in public education is unconstitutional. *Brown v. Bd. Of Educ. Of Topeka,* 349 U.S. 294, 298, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). The contours of the right asserted in this case have been clearly established.

Here, there was a disparity in treatment between the students who bullied the Plaintiff's child and the Plaintiff's child. The students who bullied were never given a substantial discipline whereas the Plaintiff was put on suspension after he took steps to defend himself after nothing was done to deter the students who bullied him. As a result, the Plaintiff was deprived of educational opportunities.

### 6. *Monell* Liability § 1983 Claims

Defendants conclude by asking the Court to dismiss the § 1983 claims against the District because municipalities cannot be liable under § 1983 under a theory of *respondeat superior. Monell v. Dep't of Soc. Servs. Of City of New York,* 436 U.S. 658, 691 (1978). While Plaintiff generally agrees with this recitation of the holding, part of what Plaintiff alleges in her amended complaint is that the District announced policy changes to the school's rules on discrimination and racism and that the previous policy, practice, customs, or all of them contributed to the infliction of constitutional violations on W.B. (Am. Comp. at 7) This is when *Monell* liability specifically attaches. *Id.* at 694-95.

Further, the Supreme Court held in *Owen v. Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) that there is no absolute or qualified immunity afforded to municipalities for damages flowing from their constitutional violations. *Id.* U.S. at 657.

## <u>CONCLUSION</u>

For the above-stated reasons, Plaintiff respectfully asks this Court to deny Defendants' partial motion to dismiss in its entirety.

Respectfully submitted,

**GRISSOM MILLER LAW FIRM, LLC**

/s/ Conner Mitchell
Barry R. Grissom, KS #10866
Jacob D. Miller, # 78954
Conner Mitchell, # 79215
Grissom Miller Law Firm, LLC
1600 Genessee Street, Suite 460
Kansas City, MO 64102
Office: 816-336-1213
Fax: 816-384-1623
barry@grissommiller.com
jake@grissommiller.com
cam@grissommiller.com

**LICKTEIG LAW FIRM, LLC**

/s/ Theodore J. Lickteig
Theodore J. Lickteig, KS #12977
Lickteig Law Firm, LLC
12760 W 87th Street, Suite 112
Lenexa, KS 66215
Office: 913-894-1090
ted@lickteiglaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and complete copy of the foregoing was filed on this 24th day of January, 2025, with the Court's CM/ECF system, thereby providing service to all counsel of record.

/s/ Conner Mitchell