IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DORLIA WILSON, as next friend to minor child, W.B.,

    *Plaintiff*,

v.

USD 290 OTTAWA, et al.,

    *Defendants*.

Case No. 24-2375-EFM

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Partial Motion to Dismiss (Doc. 38) Counts II and III of Plaintiff Dorlia Wilson's Amended Complaint. Plaintiff filed this suit on behalf of W.B., her minor child, alleging that W.B. suffered harm as a victim of racial discrimination at the Defendants' school. Defendants are Ottawa School District ("the District") and the following individuals as agents of the District in their individual capacity: Ottawa Middle School Principal Charlie Stoltenberg; Ottawa Assistant Principal Patrice Peoples; U.S.D. 290 School Board members Harold Wingert, Chris Cunningham, Julie Dandreo, Malydia Payne, Glendy Spigle, and Susan Ward; U.S.D. 290 Superintendent Ryan Cobbs; and Ottawa Middle School counselor April Jarboe. Plaintiff brought suit for equal protection violations under 42 U.S.C. § 1983 in Count II of her complaint and a negligence claim under Count III. Defendants seek dismissal of Count II under Rule 12(b)(6) for failure to state a claim and Count III under Rule 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated herein, the Court grants in part and denies in part Defendants' motion.

### I.  Factual and Procedural Background[1]

W.B. was racially bullied by fellow students at an elementary school in Ottawa, Kansas. In 2018, the bullying included one student encouraging W.B. to commit suicide, which W.B. later attempted. In December of 2020, W.B. had his hair pulled and was called racial slurs by fellow students on a bus ride. After this, Plaintiff spoke to a middle school counselor and had W.B. stop riding the bus.

The bullying continued. Sometime before February of 2022, Plaintiff reported the ongoing bullying to Ottawa Middle School Principal Charlie Stoltenberg. Come April, Plaintiff reported the bullying by email to U.S.D. 290 Superintendent Ryan Cobbs and to each individual member of the school board. The bullying was again reported at a 504 meeting, which covered academic planning for W.B. after he was diagnosed with depression and anxiety. 504 meetings are held to establish educational plans to accommodate a student's disability. Then in October, Plaintiff reported the bullying to Ottawa Middle School Principal Charlie Stoltenberg in another 504 meeting.

On December 12th through the 15th, W.B. refused to go to school because of ongoing bullying from specific students. On the 16th, W.B. was caught with a pocketknife at school and was then suspended for about a month. He claimed to have brought the knife to school for self-defense, because he feared for his life after being bullied the day before. In that incident, the bullies called him racial slurs and threatened that "it would be worse" if he came back to school. The bullies never received any substantial discipline despite W.B. being suspended.

In January of 2023, near the end of the suspension, Plaintiff went to a special services meeting to discuss W.B. splitting time between the middle school and the District's alternative

---

[1] The facts are taken from Plaintiff's Amended Complaint and are considered true for purposes of this order.

school. W.B. did not experience any bullying during his time at the alternative school. However, he still faced racial bullying in the middle school until the end of the school year. That February, the middle school did announce changes to their racial discrimination policy.

Over the 2022-23 school year, Plaintiff and W.B. reported racial bullying multiple times to Ottawa Assistant Principal Patrice Peoples and Ottawa Middle School counselor April Jarboe. In total, Plaintiff reported the bullying at least nine times with no response or reaction from any of the individual Defendants.

On August 21, 2024, Plaintiff filed this lawsuit. On December 23, 2024, Plaintiff amended her complaint. Then on January 6, 2025, Defendants made the instant motion to dismiss. Defendants' motion is fully briefed and ripe for ruling.

## II. Legal Standards

### A. Motion to Dismiss

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[3] This plausibility standard reflects the requirement in Rule 8(a) that pleadings must provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[4] Under Rule 12(b)(6), the court must accept as true all factual allegations in the

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

complaint, and must disregard legal conclusions.[5] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[6]

### B.   Subject Matter Jurisdiction

Under Rule 12(b)(1), a defendant may move to dismiss a claim for lack of subject-matter jurisdiction.[7] Federal courts are courts of limited jurisdiction, and a presumption exists against exercising jurisdiction over a case.[8] The party asserting jurisdiction bears the burden of establishing its existence.[9] Thus, the Court may exercise jurisdiction only when specifically authorized to do so and must dismiss a claim if it becomes apparent at any stage of the proceedings that it lacks jurisdiction.[10]

### III.   Analysis

### A.   Count II

§ 1983 claims are the vehicle by which a public official or municipality is held liable for violating a plaintiff's rights.[11] In Plaintiff's complaint, she alleges § 1983 violations against all Defendants for equal protection violations. In their defense, the individual Defendants assert qualified immunity, and the District piggybacks off those assertions of immunity to argue a lack of *Monell* liability. Both arguments are analyzed in turn.

---

[5] *Iqbal*, 556 U.S. at 678–79.

[6] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[7] Fed. R. Civ. P. 12(b)(1).

[8] *See in re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1170 (10th Cir. 2023) (citations omitted).

[9] *Id.*

[10] *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

[11] *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

*1. Individual Defendants*

When a defendant raises a qualified immunity defense, the plaintiff then has a two-pronged burden to show "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[12] Here, Plaintiff brings her § 1983 claim under three different theories.

First, Plaintiff's Count II is titled "For Denial of W.B.'s Substantive Rights and Equal Protection of the Laws under the Fourteenth Amendment." Defendants assert that Plaintiff has not plausibly stated a substantive due process claim in Count II. In her response, Plaintiff agrees and disclaims that she intended to bring a substantive due process claim. As such—to the extent Plaintiff's claim can be read to bring a substantive due process claim—the Court dismisses the substantive due process theory of the § 1983 claim in Count II.

Second, Count II alleges a § 1983 claim under the theory that the racial discrimination against W.B. violated his equal protection rights. The allegations and both parties' briefing indicate equal protection violations from Defendants' racial discrimination of W.B. This racial discrimination came in the form of school suspensions when W.B. was caught with a knife at school.

Third, the § 1983 claim in Count II presents a theory of a deliberate indifference claim on its face. Plaintiff alleges W.B.'s equal protection rights were violated when Defendants were deliberately indifferent to the racial bullying he faced. This deliberate indifference results from each individual Defendant's failure to respond after Plaintiff's many reports of the racial harassment. The Court will analyze both theories of the § 1983 claim in Count II as to the individual Defendants in turn.

---

[12] *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016) (citation omitted).

    a.  The racial discrimination claims are not plausibly pled, because they lack particularity as to the individual Defendants.

Since § 1983 claims impose "personal liability on government officials," courts must pay "careful attention to particulars, especially in lawsuits involving multiple defendants."[13] It is necessary for a plaintiff "to 'identify *specific* actions taken by *particular* defendants'" to plausibly plead a § 1983 claim.[14] "'It is particularly important' that plaintiffs 'make clear exactly *who* is alleged to have done *what* to *whom*, as distinguished from collective allegations.'"[15]

In Count II, Plaintiff's factual basis for the racial discrimination claim was the school's suspension of W.B. While the handing down of a suspension is a specific action, the "school" is not a particular defendant. Because the Complaint does not attribute this act to a particular Defendant, the Court cannot determine whether the first prong of qualified immunity analysis was met. Therefore, the Court dismisses Plaintiff's § 1983 claim under the theory that the individual Defendants engaged in racial discrimination against W.B. because of a lack of particularity.

    b.  Plaintiff has plausibly plead that the individual Defendants violated W.B.'s right to equal protection through their deliberate indifference to racial harassment.

On its face, Count II alleges that the individual Defendants' deliberate indifference to the racial harassment of W.B. by other students violated W.B.'s right to equal protection. The parties do not discuss this aspect of the claim in the briefing, but the Court must examine the complaint on its face.[16] The Tenth Circuit is silent as to whether deliberate indifference to racial harassment is a viable equal protection claim. However, the Tenth Circuit has recognized deliberate

---

[13] *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).

[14] *Id*. at 1226 (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)).

[15] *Id.* at 1225 (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).

[16] *Ridge at Red Hawk, LLC*, 493 F.3d at 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp*, 550 U.S. at 570).

indifference to sexual harassment claims, and other Circuits have allowed the same deliberate indifference claims as to racial harassment.[17] In considering an equal protection violation through deliberate indifference to sexual harassment, the Tenth Circuit held that school officials and teachers that "'actually knew of and acquiesced in'" the sexual harassment of a student by another student may be held liable.[18] In that case, acquiescence was found in the school staff's refusal to reasonably respond to their knowledge of the harassment.[19]

In applying the Tenth Circuit's framework to this case, Plaintiff must overcome the assertion of qualified immunity by first plausibly pleading that her son was racially harassed by other students and that the individual Defendants knew of and acquiesced in it by failing to reasonably respond. Second, Plaintiff must show that the equal protection right from racial harassment was clearly established at the time of the violation. The Court will address each in turn.

       *i.*  Plaintiff plausibly alleges an underlying violation of a constitutional right.

First, the Court determines whether Plaintiff plausibly alleged an equal protection violation under a theory of deliberate indifference to racial harassment. As relevant here, racial slurs are forms of racial harassment that violate a plaintiff's equal protection rights.[20] And in this case, Plaintiff alleges that other students regularly bullied W.B. by calling him racial slurs and that she reported the bullying to each individual Defendant. Further, Plaintiff alleges that the individual

---

[17] *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250-51 (10th Cir. 1999) (citing *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994)). *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 140 (2d Cir. 1999); *Ricketts v. Wake Cnty. Pub. Sch. Sys.*, 125 F.4th 507, 525 (4th Cir. 2025) (requiring a plaintiff to prove (1) peer-to-peer discriminatory harassment, (2) deliberate indifference by a school administrator, and (3) the indifference was motivated by discriminatory intent).

[18] *Murrell*, 186 F.3d at 1250 (quoting *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995)).

[19] *Id.*

[20] *Ryan v. City of Shawnee*, 13 F.3d 345, 346, 349-50 (10th Cir. 1993).

Defendants did nothing in response to her reports, which is acquiescence.[21] As such, the Court finds that Plaintiff has met her burden to plausibly allege an equal protection violation. Because Plaintiff meets the first prong of the qualified immunity analysis, the Court now turns to the second prong to determine if the alleged equal protection violation under a theory of deliberate indifference to racial discrimination was clearly established.

> i. Plaintiff plausibly alleges that the constitutional right was clearly established at the time of the alleged unlawful conduct.

To overcome an assertion of qualified immunity at the motion to dismiss stage, Plaintiff must also plausibly allege that deliberate indifference to racial discrimination is a clearly established equal protection violation. Rights are clearly established when "'every reasonable official would have understood that what he is doing violates that right.'"[22] Clearly established rights "'do not require a case directly on point, but existing precedent must have place . . . [the] question beyond debate.'"[23]

Because the Tenth Circuit has held racial harassment as violative of a plaintiff's equal protection rights, a reasonable defendant would have known that deliberate indifference to racial harassment violated W.B.'s equal protection rights.[24] Therefore, the Court concludes that Plaintiff has plausibly pled a violation of her son's clearly established rights to overcome Defendants' assertion of qualified immunity.

---

[21] *Murrell*, 186 F.3d at 1250 (refusing to reasonably respond to harassment is acquiescence).

[22] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[23] *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

[24] *Ryan*, 13 F.3d at 349-50; *cf. Murrell*, 186 F.3d at 1251 (identifying acts that are clearly established as unconstitutional for state actors as clearly established as unconstitutional for deliberate indifference by a state actor).

  2. *Plaintiff's* Monell *claims are not plausibly pled against the District.*

Under § 1983, municipalities may be subject to limited liability for a violation of a plaintiff's rights; this is commonly referred to as *Monell* liability. To establish *Monell* liability, a plaintiff must allege these elements: "'(1) official policy or custom, (2) causation, and (3) deliberate indifference.'"[25] In this case, both theories of Plaintiff's § 1983 claims against the District will be analyzed.

  a. The *Monell* claim under the theory of racial discrimination fails because it is not adequately pled.

A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.[26] So, when an assertion of qualified immunity is successful because of a lack of a plausibly pled constitutional violation, the municipality may not be held liable.[27] Here, Plaintiff did not plausibly plead a constitutional violation by the individual Defendants, because the racial discrimination claim lacks particularity to each individual Defendant. Therefore, the District cannot be liable for the racial discrimination claim. Next the Court will analyze Plaintiff's deliberate indifference theory.

  b. The Monell claim under the theory of deliberate indifference fails, because Plaintiff does not adequately plead causation.

For the first element, an official policy or custom can be alleged in five different ways, but Plaintiff does not clarify how they wish to establish an official policy or custom.[28] As a result, Plaintiff completely omits the second element of the *Monell* liability analysis—causation.

---

[25] *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020) (quoting *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020)).

[26] *City of L. A. v. Heller*, 475 U.S. 796, 799 (1986); *see also Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

[27] *Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir. 1993).

[28] *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (citing *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010).

Causation requires "the challenged policy . . . [to] be closely related to the violation of the plaintiff's federally protected right."[29] Here, Plaintiff does not mention the substance or theory of any official policy or custom. She only makes conclusory allegations that the school's official policy caused W.B.'s constitutional injuries. Therefore, Plaintiff cannot demonstrate a close relation between that policy and the deliberate indifference claim. As such, Plaintiff's Count II claim against the District is dismissed.

**B.    Count III**

Defendants also seek dismissal of Count III for lack of subject matter jurisdiction, asserting that Plaintiff did not comply with the notice requirements of the Kansas Tort Claims Act ("KTCA"). Count III alleges that all Defendants engaged in negligent supervision of a school environment. Because this is a negligence claim made against the District and against individuals employed by the District while acting within the scope of their employment, Count III is subject to the KTCA.[30]

Before filing a claim pursuant to the KTCA, a plaintiff must file a written notice with the clerk or governing body of the relevant municipality.[31] This notice requires, among other things, a "statement of the amount of monetary damages that is being requested."[32] That notice-of-damages requirement must be substantially complied with for a court to have subject matter jurisdiction

---

[29] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (further citations and quotations omitted).

[30] Kan. Stat. Ann. § 75-6103 ("[E]ach governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment.").

[31] Kan. Stat. Ann. § 12-105b(d)(1).

[32] *Id*.

over a KTCA claim.[33] Substantial compliance is "'compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.'"[34] The reasonable objectives of the notice are to "advise the municipality of the time and place of the injury and to give the municipality an opportunity to ascertain the character and extent of the injury sustained."[35] This is to facilitate "early and easy" claim resolution.[36]

Municipalities are robbed of the opportunity to ascertain the extent of the injury, and thus the notice requirements lack substantial compliance, when a notice lacks a statement of monetary damages or whenever the notice and original complaint vary in damages sought.[37] Therefore, Kansas courts have not condemned the use of "in excess of" amounts in a KTCA notice. In fact, this Court upheld a notice that requested damages "in excess of $1,000,000" although the plaintiff was actually seeking $4,000,000 in *Arnold v. City of Olathe*.[38]

Here, Defendants seek dismissal because Plaintiff's notice requested damages "in excess of 75,000". Defendants claim that the notice can mean "$75,001, $7.5 million, or some number in between" and so fails to give them an opportunity to ascertain the extent of the injury alleged. But Plaintiff's notice contains some dollar figure via an "in excess of" amount in their request for damages, and their original and current complaint match that figure. Accordingly, the Court finds

---

[33] *Dodge City Implement, Inc. v. Bd. of Cnty. Com'rs*, 288 Kan. 619, 205 P.3d 1265, 1281 (2009). *Garcia v. Anderson*, 46 Kan. App. 2d 1094, 268 P. 3d 1248, 1254 (2012) (holding that a notice *must* have a request for damages even when a municipality communicates that mediation is "out of the question").

[34] *Orr v. Heiman*, 270 Kan. 109, 12 P.3d 387, 390 (2000) (quoting *City of Lenexa v. City of Olathe*, 233 Kan. 159, 660 P.2d 1368, 1373 (1983)).

[35] *Dodge City Implement, Inc.*, 205 P.3d at 1281.

[36] *Id.* at 1283.

[37] *Sleeth v Sedan City Hosp.*, 298 Kan. 853, 317 P.3d 782, 791–92 (2014) (referring to *Cont'l W. Ins. Co. v. Shultz*, 297 Kan. 769, 304 P. 3d 1239 (2013)); *see also Ayalla v. Unified Gov't.*, 349 P.3d 491, (Kan. Ct. App. 2015) (requiring notices to have at least some dollar figure to be substantially compliant).

[38] 413 F. Supp. 3d 1087, 1113 (D. Kan. 2019).

that Plaintiff substantially complied with the request for damages notice requirement of the KTCA. As such, the Court does not lack subject matter jurisdiction over this claim.

**IT IS THEREFORE ORDERED** that Defendants' Partial Motion to Dismiss (Doc. 38) is **GRANTED IN PART** and **DENIED IN PART**.

The Court denies dismissal of Count II's deliberate indifference claims against the individual Defendants and Count III. The Court grants dismissal of Count II's substantive due process and racial discrimination claims against the individual Defendants and all of Count II's *Monell* claims against the District.

**IT IS SO ORDERED.**

Dated this 30th day of July, 2025.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE